UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                                    :
ABDULLAH JAMES GEORGE WILSON,                       :
on behalf of himself and others similarly situated, :
                                                    :       Case No. 1:14-cv-2477 (JPO) (RLE)
                              Plaintiff,             :
                                                    :
             -against-                              :
                                                    :
CORELOGIC SAFERENT, LLC,                             :
                                                    :
                              Defendant.            :
                                                    :
----------------------------------------------------------------------X


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**


TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................................. I

PRELIMINARY STATEMENT ............................................................................................. 1

UNDISPUTED FACTS ......................................................................................................... 2

    I.      SafeRent obtains criminal records from governmental agencies, which are then subject to rigorous quality assurance procedures and reported by SafeRent without altering the substance of the record provided ........................... 2

    II.     SafeRent receives regularly-updated records directly from the NYDOC ............. 3

    III.    The nature of the NYDOC and its record keeping functions ............................... 4

    IV.    Plaintiff's criminal record was consistently contained in the NYDOC database file, and the record was indisputably still listed on the NYDOC website at the time of SafeRent's reporting .......................................................... 6

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ..................................................................................................................... 8

    I.      Courts have consistently held that relying on records obtained from a governmental agency satisfies § 1681e(b) .......................................................... 9

    II.     The undisputed facts of this case affirmatively demonstrate the reasonableness of SafeRent's processes ............................................................ 11

    III.    Plaintiff has presented no evidence of the unreasonableness of SafeRent's procedures, which also independently requires summary judgment .................. 13

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bay v. Times Mirror Magazines. Inc.*,
    936 F.2d 112 (2d Cir. 1991) ................................................................. 13

*Benson v. Trans Union, LLC*,
    387 F. Supp. 2d 834 (N.D. Ill. 2005) ................................................... 14

*Beyer v. Cnty. of Nassau*,
    524 F.3d 160 (2d Cir. 2008) ................................................................... 7

*Brown v. Henderson*,
    257 F.3d 246 (2d Cir. 2001) ................................................................... 8

*Childress v. Experian Info. Solutions, Inc.*,
    790 F.3d 745 (7th Cir. 2015) ............................................................... 13

*Frost v. Experian Information Solutions, Inc.*,
    No. 98 Civ. 2106, 1998 WL 765178 (S.D.N.Y. Oct. 30, 1998) .............. 9

*Frydman v. Experian Info. Solutions, Inc.*,
    No. 14cv9013, 2016 WL 5661596 (S.D.N.Y. Aug. 11, 2016) ................ 14

*Garrison v. Equifax Info. Servs., LLC*,
    No. CV 10-13990, 2012 WL 1278048 (E.D. Mich. Apr. 16, 2012) ........ 11

*Grigoryan v. Experian Info. Solutions, Inc.*,
    No. 13-07450, 2014 WL 7745883 (C.D. Cal. Dec. 18, 2014) ............... 11

*Gross v. Nat'l Broad. Co., Inc.*,
    232 F. Supp. 2d 58 (S.D.N.Y. 2002) ...................................................... 8

*Haro v. Shilo Inn, Bend LLC*,
    No. 08-6306, 2009 WL 2252105 (D. Or. July 24, 2009) ................. 11, 14

*Henson v. CSC Credit Servs.*,
    29 F.3d 280 (7th Cir. 1994) ................................................................. 10

*Houston v. TRW Information Services, Inc.*,
    No. 88 Civ. 0186, 1989 WL 59850 (S.D.N.Y. May 1, 1989) ............ 9, 10

*Moore v. First Advantage Enter. Screening Corp.*,
    No. 4:12 CV00792, 2013 WL 1662959 (N.D. Ohio Apr. 17, 2013) ... 10, 14

*Nguyen v. Ridgewood Sav. Bank*,
    No. 14-CV-1058, 2015 WL 2354308 (E.D.N.Y. May 15, 2015)............................................9

*Ogbon v. Beneficial Credit Servs., Inc.*,
    No. 10-3760, 2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013)..........................................9, 11, 12

*Serfess v. Equifax Credit Info. Servs.*,
    No. 13-406, 2014 WL 4272032 (D.N.J. Aug. 28, 2014).......................................................11

*Wenning v. On-Site Manager, Inc.*,
    No. 14cv9693, 2016 WL 3538379 (S.D.N.Y. June 22, 2016) ..............................................14

*Whelan v. Trans Union Credit Reporting Agency*,
    862 F. Supp. 824 (E.D.N.Y. 1994) .......................................................................................9

*Wilson v. Mazzuca*,
    570 F.3d 490 (2d Cir. 2009) .............................................................................................2, 6

*Wright v. Experian Info. Sols., Inc.*,
    805 F.3d 1232 (10th Cir. 2015) ..........................................................................................13

**FEDERAL STATUTES**

15 U.S.C. § 1681e(b).................................................................................................*passim*

**OTHER STATUTES**

Criminal Procedure Law § 160.50 and ........................................................................6

New York Criminal Procedure Law § 160.50.................................................................*passim*

N.Y. Gen. Bus. Law § 380-j(e)...............................................................................1, 9

Defendant, CoreLogic SafeRent, LLC ("SafeRent"), by counsel, hereby submits this memorandum of law in support of its Motion for Partial Summary Judgment.

## PRELIMINARY STATEMENT

Plaintiff's 1995 felony robbery conviction was first obtained by SafeRent *directly* from the New York Department of Corrections ("NYDOC") and updated numerous times thereafter. And, in 2012, SafeRent accurately identified that 1995 conviction in response to a request by a prospective landlord for a criminal record background check on Plaintiff.  Plaintiff, however, alleges that the record had been previously sealed under New York Criminal Procedure Law § 160.50 by the time it was reported by SafeRent.  On that basis, Plaintiff argues that SafeRent's practice for gathering and reporting the criminal conviction was "unreasonable."  That allegation forms the basis for Counts II and III[1] of the Complaint, which are asserted under parallel provisions of the Fair Credit Reporting Act ("FCRA") at 15 U.S.C. § 1681e(b)) and the New York Fair Credit Reporting Act at N.Y. Gen. Bus. Law § 380-j(e)).

Plaintiff's argument, however, has been uniformly rejected by the numerous courts to consider it.  Those courts have consistently held that a defendant's accurate transmission of a record that it received from a governmental source is reasonable as a matter of law, absent prior notice of systemic problems with the record.  Plaintiff's attempt to impose "strict liability" on SafeRent under the established record is contrary to well settled law under the FCRA.

There is no evidence that SafeRent had any basis to doubt the accuracy of the NYDOC's reporting.  Rather, the undisputed facts show just the opposite.  For instance, the NYDOC is expressly charged under the New York Code with assembling criminal record histories and

---

[1] Per the agreement of the parties, Count I was dismissed.  (Dkt. No. 29.)  Plaintiff also alleges in Counts IV and V that SafeRent failed to adequately respond to his disputes.  That is false.  The evidence at trial will show, via SafeRent's business records, that it responded to each of the disputes lodged by Plaintiff. Because Plaintiff disputes that contention, however, it is not addressed at the summary judgment stage.

taking measures to ensure the accuracy of such records.  Indeed, the NYDOC actively represents to the public that it removes from its files records that have been sealed under Criminal Procedure Law § 160.50.  The data files delivered to SafeRent by the NYDOC also reflect continuous updating of records and the removal of convictions/offenders in response to post-judgment developments.  SafeRent also lacked notice of the sealed status of 1995 robbery conviction prior to the time of its reporting in April 2012.  Indeed, it is factually undisputed that the NYDOC was displaying the 1995 robbery conviction on its website for many months *after* SafeRent issued its report in 2012.  SafeRent further undertakes extensive quality assurance processes with respect to the criminal records obtained from its sources.

At most, this was an anomalous occurrence by the NYDOC based on the highly unusual facts of Plaintiff's situation (*e.g.*, his securing a writ of *habeas corpus* while serving a prison sentence[2]), not any flaw in SafeRent's procedures.  Indeed, the adoption of the principle Plaintiff asserts here, where a background screening company could be liable for accurately reporting public records received from a governmental agency, would impermissibly rewrite the FCRA to impose strict liability.  SafeRent is entitled to summary judgment under Counts II and III.

## UNDISPUTED FACTS

**I.  SafeRent obtains criminal records from governmental agencies, which are then subject to rigorous quality assurance procedures and reported by SafeRent without altering the substance of the record provided.**

SafeRent assists leasing agents in conducting background screenings for prospective tenants.  (Rule 56.1 Smt. ¶ 1.)  SafeRent contractually offers a suite of services to leasing agents, one of which is a criminal public record background screening report.  (Rule 56.1 Smt. ¶ 2.)

Upon a request for such a report – and the submission of personal identifying information about the applicant to SafeRent by the leasing agent – SafeRent supplies criminal records to its

---

[2] *Wilson v. Mazzuca*, 570 F.3d 490 (2d Cir. 2009) (granting writ for ineffective assistance of counsel).

customers that are responsive to the request from a database that it refers to as the "Multistate Database," which is housed in a secure computer system.  (Rule 56.1 Smt. ¶ 3.)  ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

**II.  SafeRent receives regularly-updated records directly from the NYDOC.**

Included among SafeRent's many governmental sources of information is the NYDOC, which has been regularly providing records to SafeRent for more than fifteen years.  (Rule 56.1 Smt. ¶ 11.)  The NYDOC provides records to SafeRent via a "full file" replacement, meaning that the NYDOC provides SafeRent with its full, updated database of criminal records each time that a new file is made available to the public by the NYDOC.  (Rule 56.1 Smt. ¶ 12.)  The database file that is provided by the NYDOC thus represents the current status of the criminal records that are maintained by the NYDOC, such that the previous database file of the NYDOC is meant to be completely replaced with each successive update.  *Id.*

Historically, the NYDOC has made its database file available to the public (including SafeRent) approximately three or four times per year.  (Rule 56.1 Smt. ¶ 13.)  When an updated database file is made publicly available by the NYDOC, SafeRent promptly procures the new version of the database file, and it then replaces all of the existing NYDOC records in the Multistate Database with the new file.  (Rule 56.1 Smt. ¶ 14.)  Thus, the universe of NYDOC criminal records is fully replaced within SafeRent's Multistate Database with each new version of the database file that is made available.  *Id.*  The NYDOC database file actively accounts for post-filing developments in its criminal records, including post-conviction changes in the status of the proceeding, as more than 148,800 separate offenders have been removed from the NYDOC database file since it was first delivered to SafeRent in 2001.  (Rule 56.1 Smt. ¶ 15.) SafeRent has never received any indication from the NYDOC or any other governmental agency in New York that there are any problems with the NYDOC database file, including with respect to the transmission of previously-sealed criminal records.  (Rule 56.1 Smt. ¶ 16.)  SafeRent remains unaware of any email, communication, or other document from the NYDOC identifying any issues regarding the challenged 1995 conviction or the NYDOC's process for sealing records under Criminal Procedure Law § 160.50.  (Rule 56.1 Smt. ¶ 17.)

### III.    The nature of the NYDOC and its record keeping functions.

The NYDOC is a state agency that is charged with aggregating and maintaining criminal records on all individuals who are subject to its jurisdiction (*i.e.*, incarceration).  (Rule 56.1 Smt. ¶ 18.)   By statute, the NYDOC is required to "maintain and analyze statistical and other information and data with respect to persons subject to the jurisdiction of the department, including but not limited to . . . (b) the criminal history of such persons."  (Rule 56.1 Smt. ¶ 19) (citing NY CLS Correc § 29(b).)   The NYDOC is required to use these records to provide an "annual report" to the legislature.  (Rule 56.1 Smt. ¶ 20) (citing NY CLS Correc § 29(b).)

4

The New York Code also provides extensive mechanisms for inmates (or former inmates) to contest the accuracy/reportability of the information that is collected by the NYDOC.  For instance, if "the completeness or accuracy of any item of information contained in the personal history or correctional supervision history portion of an inmate's record is disputed by the inmate, the inmate shall convey such dispute to the custodian of the record or the designee of the custodian reviewing the record with him."  (Rule 56.1 Smt. ¶ 21) (citing NY CLS Correc § 29(b).)  Upon the receipt of a dispute, "the custodian of the record [at the NYDOC] shall, within a reasonable period of time, investigate the accuracy and completeness of the information unless he has reasonable grounds to believe that the dispute by the inmate is frivolous."  *Id.*  And, "[i]f the custodian, after investigation, shall determine the disputed information is erroneous or incomplete, he shall make such changes as are necessary and shall report to the inmate the results of the investigation and the changes, if any, which have been made no later than 45 days after the custodian or the custodian's designee has been advised of the dispute."  *Id.*  These processes further ensure that the records maintained by the NYDOC are subject to perpetual supervision by the offender and prompt revision by the NYDOC upon the receipt of a valid dispute.

The official documents published by the NYDOC in 2012 regarding its criminal records practices reinforce these principles.  For instance, the NYDOC stated on its website in 2012 and continues to state today that "reasonable efforts have been made to ensure that all electronic information made available is current, complete, and accurate."  (Rule 56.1 Smt. ¶ 22.)  Also, with respect to the criminal records that can be accessed via the NYDOC's online portal to its criminal record files, the NYDOC represented in 2012 and still represents today:  "The information . . . is the most up-to-date information available.  It is extracted from the

Department's main inmate information database and placed on the webpage at the moment of the request." (Rule 56.1 Smt. ¶ 23.)

Those overarching principles also apply with respect to the specific facts of this case. In particular, the NYDOC represented in 2012 and still represents that "when a person has had a conviction reversed, all official records are then sealed pursuant to Criminal Procedure Law § 160.50 and, accordingly, the Department deletes all such information from its database." (Rule 56.1 Smt. ¶ 24.) The NYDOC thus explicitly represents to SafeRent and the public generally that its active processes for updating offender records accomplish *exactly* what Plaintiff claims should have been done here with respect to the sealed 1995 felony robbery conviction.

## IV.    Plaintiff's criminal record was consistently contained in the NYDOC database file, and the record was indisputably still listed on the NYDOC website at the time of SafeRent's reporting.

This case centers on Plaintiff's 1995 charge for robbery in the Queens County Criminal Court. Plaintiff was convicted of that offense, was incarcerated, and a record of that conviction was maintained by the NYDOC. (Rule 56.1 Smt. ¶ 25.) Evidently, the conviction was sealed by the Supreme Court of the State of New York – Queens County under Criminal Procedure Law § 160.50 in November 2009. (Rule 56.1 Smt. ¶ 26.) That was accomplished after Plaintiff secured a writ of *habeas corpus* in federal court. (Rule 56.1 Smt. ¶ 27); *see also Wilson*, 570 F.3d at 490. Despite its sealing, the criminal record was provided to SafeRent within the NYDOC database file, including in the last version of the database file made available to SafeRent before the report was sent to Eastchester Heights in April 2012. (Rule 56.1 Smt. ¶ 28.) In every instance where the record was sent to SafeRent by the NYDOC, all of the foregoing, internal quality-assurance processes were applied to the record by SafeRent. (Rule 56.1 Smt. ¶ 29.) There were no identified issues with the 1995 criminal record, which passed those quality-assurance processes,

and which was otherwise consistent in every way with the criminal data transmitted by the NYDOC in the database file for many thousands of other inmates.  *Id.*

In April 2012, Plaintiff applied to rent an apartment with a potential landlord identified as Eastchester Heights.  (Rule 56.1 Smt. ¶ 30.)  As part of the application process, Eastchester Heights requested a criminal background report from SafeRent.  (Rule 56.1 Smt. ¶ 31.)  SafeRent's systems searched the Multistate Database and located the 1995 robbery conviction, which had been included within the most recent NYDOC full database file made available to SafeRent.  (Rule 56.1 Smt. ¶¶ 28, 31.)  SafeRent listed that conviction on the report that was sent to Eastchester Heights in 2012, noting that the record was from the "Queens, NY" criminal court and that the record had been provided to SafeRent by the "NYDOC."  (Rule 56.1 Smt. ¶ 32.)  Prior to sending the report to Eastchester Heights, SafeRent had never received any notice from Plaintiff, the NYDOC, or anyone else questioning the accuracy of the 1995 robbery conviction.  (Rule 56.1 Smt. ¶ 33.)  Nor did Plaintiff avail himself of the dispute process published by the NYDOC with respect to reported criminal records in the almost three-year period from the time that the record was sealed in 2009 until it was reported by SafeRent in April 2012.  (Rule 56.1 Smt. ¶ 34.)  Indeed, as acknowledged by Plaintiff in his correspondence to the NYDOC in late 2012 and early 2013, at the time that the screening report was sent to Eastchester Heights in April 2012, Plaintiff's 1995 robbery conviction was *still* being reported on the official website of the NYDOC.  (Rule 56.1 Smt. ¶ 35.)

## LEGAL STANDARD

Summary judgment is required where the moving party shows that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing

*Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).   To survive a summary judgment motion, a plaintiff "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'  [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).   "Mere conclusory statements, conjecture or speculation" will not defeat summary judgment.  *Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

## ARGUMENT

There is no dispute that Plaintiff was convicted of robbery in 1995 and that SafeRent properly attributed the record to Plaintiff in its report.  However, Plaintiff claims that, at the time SafeRent sent the report to Eastchester Heights in 2012, the conviction had been sealed, notwithstanding its continued reporting by the NYDOC.  Compl., ¶ 21.  On that basis, Plaintiff alleges that SafeRent failed to follow reasonable procedures to ensure the accuracy of its reports. Compl., ¶ 22.  Specifically, in conclusory fashion, Plaintiff claims in Counts II and III that SafeRent maintained inadequate procedures to prevent the reporting of "criminal records that had been expunged, vacated, sealed or dismissed prior to their sale or dissemination."  Compl., ¶ 41.

With respect to Count II, § 1681e(b) provides, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  Thus, to prevail on a claim under § 1681e(b), a plaintiff must prove each of the following elements: "(1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting

agency's negligence proximately caused the plaintiff's injury." *Whelan v. Trans Union Credit Reporting Agency,* 862 F. Supp. 824, 829 (E.D.N.Y. 1994).

Merely reporting inaccurate information is insufficient to give rise to liability under the FCRA. *Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-1058, 2015 WL 2354308, at *31 (E.D.N.Y. May 15, 2015). The FCRA is not a "strict liability" statute. *Id.* Instead, even if an inaccuracy is identified, a plaintiff must establish that the procedures used to generate the report were "unreasonable" in order to survive summary judgment. *Id.* N.Y. Gen. Bus. Law § 380-j(e) "is substantially similar to [§ 1681e(b)] [and], it must be construed the same way." *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-3760, 2013 WL 1430467, at * 24 (S.D.N.Y. Apr. 8, 2013). Therefore, Counts II and III can be analyzed together.

## I.   Courts have consistently held that relying on records obtained from a governmental agency satisfies § 1681e(b).

Against this backdrop, courts within the Second Circuit have consistently held that reliance on the records received from a governmental agency is *per se* reasonable for purposes of § 1681e(b), absent prior knowledge of an inaccuracy. For instance, in *Frost v. Experian Information Solutions, Inc.*, No. 98 Civ. 2106, 1998 WL 765178 (S.D.N.Y. Oct. 30, 1998), the court noted that, "as a matter of law," a credit reporting agency is not liable for reporting inaccurate information obtained from a court, "absent prior notice from the consumer" about the allegedly inaccurate information. *Id.* at *7 (internal citations omitted).

The same was true in the analogous decision of *Houston v. TRW Information Services, Inc.*, No. 88 Civ. 0186, 1989 WL 59850 (S.D.N.Y. May 1, 1989), where the court addressed reliance on information obtained from a vendor employed by the defendant that had checked the "Judgment Docket Book" maintained by the clerk in the context of a challenge to the defendant's failure to note that the record reported had since been vacated. In dismissing the FCRA claim

asserted under § 1681e(b) on summary judgment, the court held: "I conclude that TRW followed reasonable procedures in preparing the credit reports on Houston . . . .  Moreover, the burden of [having its records vendor] chec[k] beyond the Judgment Docket Book outweighs the potential that incomplete judgment information will be reported.  The omission of the vacatur was an unfortunate error for which TRW is not liable."  *Id.* at *4-5.

Multiple decisions outside of the Second Circuit have also confirmed that reliance on a judicial database, court clerk, or judicial docket is reasonable as a matter of law, unless the defendant has a pre-existing basis to question the quality/accuracy of the data put at issue by the consumer.  As perhaps the seminal case on the issue, the Seventh Circuit held in *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994), that a "credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate."  *Id.* at 285.  The court held that "[r]equiring [CRAs] to look beyond the face of every court document to find the rare case when a document incorrectly reports the result of the underlying action would be unduly burdensome and inefficient."  *Id.*  The court further explained:

> [A] contrary rule of law would require credit reporting agencies to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action.  Such a rule would also require credit reporting agencies to engage in background research which would substantially increase the cost of their services.  In turn, they would be forced to pass on the increased costs to their customers and ultimately to the individual consumer.

*Id.* at 285.  That principle recognizes both the intrinsic reliability of governmental sources of information and the negative practical implications on the critical background screening industry if a contrary rule were to be adopted by courts.

That reasoning has since been adopted by numerous other courts nationwide.  *See, e.g., Moore v. First Advantage Enter. Screening Corp.*, No. 4:12 CV00792, 2013 WL 1662959, at

10

*21 (N.D. Ohio Apr. 17, 2013) (granting summary judgment as to § 1681k(a) claim, which requires the maintenance of "strict procedures": "Absent any authority to suggest that First Advantage's reliance on the court clerk . . . was not in keeping with 'strict procedures', Plaintiff's position is untenable."); *Haro v. Shilo Inn, Bend LLC*, No. 08-6306, 2009 WL 2252105, at *7-9 (D. Or. July 24, 2009) (dismissing FCRA claim where the defendant had obtained electronic criminal records from the "Oregon Judicial Information Network website" and accurately reported the content of those records).

In fact, courts within the Southern District of New York (and elsewhere) have extended this principle to even *private* furnishers of information.  In *Ogbon*, for instance, the plaintiff's identity was stolen and certain debts were attributed to her that she did not incur.  2013 WL 1430467, at *6.  The court awarded summary judgment to the defendants, reasoning that, "[plaintiff] identified no basis on which a jury could find that the defendants had a basis to question the accuracy of the reports it had received from Furnishers." *Id.* at *23.  That ruling is consistent with the regulatory commentary of the Federal Trade Commission, which states that § 1681e(b) "does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures."[3]  16 C.F.R. pt. 600, app., § 607 at 3.A.

## II.   The undisputed facts of this case affirmatively demonstrate the reasonableness of SafeRent's processes.

In light of the above authority, the dismissal of Counts II and III should be straightforward.  More than utilizing a private furnisher that it "reasonably believe[d] [to be]

---

[3] *Many* other jurisdictions share this view under § 1681e(b).  *See, e.g., Serfess v. Equifax Credit Info. Servs.*, No. 13-406, 2014 WL 4272032, at *18 (D.N.J. Aug. 28, 2014) (finding "reliance upon [information provided by] Bank of America is reasonable"); *Grigoryan v. Experian Info. Solutions, Inc.*, No. 13-07450, 2014 WL 7745883, at * 64-65 (C.D. Cal. Dec. 18, 2014) (same); *Garrison v. Equifax Info. Servs., LLC*, No. CV 10-13990, 2012 WL 1278048, *7 (E.D. Mich. Apr. 16, 2012) (same).

reputable," *see id.*, which would itself prevent any liability, SafeRent here used the NYDOC itself.  Further, SafeRent had no notice of any dispute regarding the 1995 robbery conviction at the time of its reporting of the conviction in April 2012.  (Rule 56.1 Smt. ¶¶ 29, 33.)  Plaintiff had previously never lodged a dispute as to the record with the NYDOC during the multiple years between the sealing of the record in 1999 and its reporting in 2012, nor had the NYDOC informed SafeRent of any issue with the record over the course of numerous updates.  (Rule 56.1 Smt. ¶¶ 33-34.)  In fact, as Plaintiff has admitted, the official website of the NYDOC was actively publishing the 1995 robbery conviction at the time of SafeRent's reporting.  (Rule 56.1 Smt. ¶ 35.)  That publication would have also been accessible by Plaintiff, who nonetheless did not avail himself of the established statutory process for seeking correction with the NYDOC.  (Rule 56.1 Smt. ¶ 34.)  The NYDOC also had publicly represented that it had taken measures to ensure the "accuracy" of its "up-to-date" information, including to account for any records that had been sealed under Criminal Procedure Law § 160.50, which is confirmed by the fact that more than 148,800 offenders have been removed from the database file made since it was first provided to SafeRent by the NYDOC in 2002.  (Rule 56.1 Smt. ¶¶ 15, 22-24.)  SafeRent also never received any indication from the NYDOC – either before April 2012 or after – that there were problems with the database file, either generally or with respect to the post-conviction sealing of records.  (Rule 56.1 Smt. ¶ 16.)  Moreover, SafeRent's extensive quality control procedures with respect to its criminal record data had identified no problem with the record, which was consistent in all regards with the offender data that had been historically delivered by the NYDOC and integrated into SafeRent's Multistate Database.  (Rule 56.1 Smt. ¶ 17.)

Taken together, these procedures and record require summary judgment on Counts II and III.  *See, e.g., Ogbon*, 2013 WL 1430467, at *23 ("Both Trans Union and Experian have

provided detailed explanations of the procedures they utilize to ensure the accuracy of their credit reports . . . .   But Ogbon has identified no basis on which a jury could find that the defendants had a basis to question the accuracy of the reports it had received from Furnishers that Ogbon herself had incurred the debts in question."); *see also  Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1240 (10th Cir. 2015) (defendant did not err by relying on LexisNexis to collect information from county recorder's website, because the erroneously reported lien was "not inaccurate on its face, inconsistent with information the CRAs already had on file, or obtained from a source that was known to be unreliable."); *Childress v. Experian Info. Solutions, Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (holding that it would be unreasonable to require CRAs to independently verify whether a bankruptcy petition had been dismissed or withdrawn because this would require "a live human being, with at least a little legal training, to review every bankruptcy dismissal and classify it as either voluntary or involuntary.").  Plaintiffs' attempt to impose strict liability must be rejected.

### III.   Plaintiff has presented no evidence of the unreasonableness of SafeRent's procedures, which also independently requires summary judgment.

"[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Bay v. Times Mirror Magazines. Inc.*, 936 F.2d 112, 116 (2d Cir. 1991).  Even apart from the affirmative evidence of the reasonableness of SafeRent's practices set forth above, Plaintiff has no adduced evidence in discovery to support the alleged "unreasonableness" of SafeRent's reporting.

For example, Plaintiff took no discovery from the NYDOC that would enable him to even claim that there were "systemic" issues with the accuracy of the records it supplies.  (Rule 56.1 Smt. ¶ 36.)  There also is no evidence that SafeRent was aware of any problems with the

NYDOC's active reporting of the 1995 criminal conviction or the current status of the record as of April 2012.  (Rule 56.1 Smt. ¶¶ 17, 33.)  Plaintiff also disclosed no expert testimony to try and argue that it would have been "practical and economically rational" for SafeRent to gather information on New York offenders in some manner other than obtaining that data from the NYDOC (nor is any such argument possible).  (Rule 56.1 Smt. ¶ 37); *see also e.g.*, *Wenning v. On-Site Manager, Inc.*, No. 14cv9693, 2016 WL 3538379, at *60-61 (S.D.N.Y. June 22, 2016) (granting summary judgment under § 1681e(b): "Plaintiffs' failure to adduce such evidence, or indeed to engage in any evidence-based evaluation of the practicality and cost of requiring such [court record] supplementation, prevents them from reaching a jury on the question of reasonableness."); *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 843 (N.D. Ill. 2005) (granting summary judgment: "But even if that argument were to be accepted at face value, Benson has not explained what other investigatory measures Trans Union should reasonably have undertaken . . . .").

Moreover, courts have "rejected the contention that CRAs are required to conduct manual reviews of all the items that they receive before including them in a consumer's credit file." *Frydman v. Experian Info. Solutions, Inc.*, No. 14cv9013, 2016 WL 5661596, at *40 (S.D.N.Y. Aug. 11, 2016) (collecting cases).  Hence, even despite the absence of any evidence regarding the reasonableness of such a process, to the extent Plaintiff will claim that SafeRent was required to obtain the hardcopy court file to second guess the reporting of the NYDOC before issuing its report, that contention is without support under the FCRA.  *See, e.g.*, *Haro*, 2009 WL 2252105, at *7-9 (affirming reliance on the court's electronic database of criminal records and its associated "website" where plaintiff did not "present legal authority that a reporting agency may not rely on [the electronic database of the government agency]"); *see also Moore*, 2013 WL

1662959, at *23 ("Plaintiff has offered no authority to support the suggestion that a furnisher of information like First Advantage must pull and personally examine every document within a court's file instead of being able to rely upon the docket . . . .  Plaintiff's position is untenable."). Summary judgment is thus also independently warranted due to the lack of any evidence supporting Plaintiffs' claims.  Count II and III must be dismissed with prejudice.

## CONCLUSION

WHEREFORE, CoreLogic SafeRent LLC, respectfully requests that the Court: (1) grant its Motion for Partial Summary Judgment, thereby dismissing Counts II and III with prejudice; and (2) grant it such other and further relief as may be appropriate.

Dated:  New York, New York
      February 9, 2017

TROUTMAN SANDERS LLP


By:  /s/ Timothy J. St. George
Kevin P. Wallace
TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
Tel.:  (212) 704-6440
Fax:  (212) 704-5913

Alan D. Wingfield (*pro hac vice*)
David N. Anthony (*pro hac vice*)
Timothy J. St. George (*pro hac vice*)
1001 Haxall Point
Richmond, VA 23219
Tel:  (804) 697-1650
Fax:  (804) 698-5118

*Attorneys for Defendant*