UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ABDULLAH JAMES GEORGE WILSON,
on behalf of himself and others similarly situated,

                      Plaintiff,

            -against-

CORELOGIC SAFERENT, LLC,

                      Defendant.
------------------------------------------------------------------------X

Case No. 1:14-cv-2477 (JPO) (RLE)

# DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

Defendant, CoreLogic SafeRent, LLC ("SafeRent"), by counsel, submits this Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 in support of its Motion for Partial Summary Judgment.

1. SafeRent assists leasing agents in conducting background screenings for prospective tenants. (Declaration of Matthew Knowles, ¶ 4.)

2. SafeRent contractually offers a suite of services to leasing agents, one of which is the compilation of a criminal public record background screening report. (Declaration of Matthew Knowles, ¶ 4.)

3. Upon a request for such a report – and the submission of personal identifying information about the applicant to SafeRent by the leasing agent – SafeRent supplies criminal records to its customers that are responsive to the request from a database that it refers to as the "Multistate Database," which is housed in a secure computer system. (Declaration of Matthew Knowles, ¶ 5.)

4. The records in the Multistate Database are continually updated. (Declaration of Matthew Knowles, ¶ 6.)

5. From the time that data is first received, SafeRent takes multiple steps to ensure its quality. (Declaration of Matthew Knowles, ¶ 6.)

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████

11. Included among SafeRent's many governmental sources of information is the New York Department of Corrections ("NYDOC"), which has been regularly providing records to SafeRent for more than fifteen years. (Declaration of Matthew Knowles, ¶ 7.)

12. The NYDOC provides records to SafeRent via a "full file" replacement, meaning that the NYDOC provides SafeRent with its full, updated database of criminal records each time

that a new file is made available to the public by the NYDOC. That full file is meant to be completely replaced with each successive update. (Declaration of Matthew Knowles, ¶ 7.)

13. Historically, the NYDOC has made its database file available to the public (including SafeRent) approximately three or four times per year. (Declaration of Matthew Knowles, ¶ 8.)

14. When an updated database file is made publicly available by the NYDOC, SafeRent promptly procures the new version of the database file, and it then replaces all of the existing NYDOC records in the Multistate Database with the new database file. (Declaration of Matthew Knowles, ¶ 8.)

15. The NYDOC database file actively accounts for post-filing developments in its criminal records, including post-conviction changes in the status of the proceeding, as more than 148,800 separate offenders have been removed from the NYDOC database file since it was first delivered to SafeRent in 2001. (Declaration of Matthew Knowles, ¶ 9.)

16. SafeRent has never received any indication from the NYDOC or any other governmental agency in New York that there are any issues with the NYDOC database file, including with respect to the transmission of previously-sealed criminal records. (Declaration of Matthew Knowles, ¶ 10.)

17. SafeRent remains unaware of any email, communication, or other document from the NYDOC identifying any issues regarding the database file or the NYDOC's process for sealing records under Criminal Procedure Law § 160.50. (Declaration of Matthew Knowles, ¶ 11.)

18. The NYDOC is a state agency that is charged with aggregating and maintaining criminal records on all individuals who are subject to its jurisdiction (*i.e.*, incarceration). NY CLS Correc § 29(b).

19. By statute, the NYDOC is required to "maintain and analyze statistical and other information and data with respect to persons subject to the jurisdiction of the department, including but not limited to . . . (b) the criminal history of such persons." NY CLS Correc § 29(b).

20. The NYDOC is required to use these records to provide an "annual report" to the legislature. NY CLS Correc § 29(b).

21. NY CLS Correc. Appx. § 5.51 provides, if "the completeness or accuracy of any item of information contained in the personal history or correctional supervision history portion of an inmate's record is disputed by the inmate, the inmate shall convey such dispute to the custodian of the record or the designee of the custodian reviewing the record with him." *Id.* Upon the receipt of a dispute, the statute further provides that "the custodian of the record [at the NYDOC] shall, within a reasonable period of time, investigate the accuracy and completeness of the information unless he has reasonable grounds to believe that the dispute by the inmate is frivolous." *Id.* And, the statute further provides that "[i]f the custodian, after investigation, shall determine the disputed information is erroneous or incomplete, he shall make such changes as are necessary and shall report to the inmate the results of the investigation and the changes, if any, which have been made no later than 45 days after the custodian or the custodian's designee has been advised of the dispute." *Id.*

22. The NYDOC stated on its website in 2012 and continues to state today that "reasonable efforts have been made to ensure that all electronic information made available is current, complete, and accurate." (Declaration of Timothy St. George, ¶ 4, Exhibit A.)

23. The NYDOC represented in 2012 and still represents today: "The information . . . is the most up-to-date information available. It is extracted from the Department's main inmate

information database and placed on the webpage at the moment of the request." (Declaration of Timothy St. George, ¶ 5, Exhibit B at p. 1.)

24. The NYDOC represented in 2012 and still represents that "when a person has had a conviction reversed, all official records are then sealed pursuant to Criminal Procedure Law § 160.50 and, accordingly, the Department deletes all such information from its database." (Declaration of Timothy St. George, ¶ 5, Exhibit B at p. 3.)

25. Plaintiff was convicted of a 1995 charge for robbery in the Queens County Criminal Court, was incarcerated, and a record of that conviction was maintained by the NYDOC. (Declaration of Matthew Knowles, ¶ 12; Declaration of Timothy St. George, ¶ 7, Exhibit D at p. 3.)

26. The conviction was sealed by the Supreme Court of the State of New York – Queens County under Criminal Procedure Law § 160.50 in November 2009. (Declaration of Timothy St. George, ¶ 7, Exhibit D at p. 1.)

27. Plaintiff subsequently secured a writ of *habeas corpus* in federal court with respect to the 1995 robbery conviction. *Wilson v. Mazzuca*, 570 F.3d 490 (2d Cir. 2009).

28. Despite its sealing, the 1995 robbery conviction was provided to SafeRent within the NYDOC database file, including in the last version of the database file made available to SafeRent before the report was sent to Eastchester Heights in April 2012. (Declaration of Matthew Knowles, ¶ 12.)

29. In every instance where the 1995 robbery conviction was sent to SafeRent by the NYDOC, all of SafeRent's data quality-assurance processes were applied to the record by SafeRent. There were no identified issues with the 1995 criminal record, which passed those quality-assurance processes, and which was otherwise consistent in every way with the criminal

data transmitted by the NYDOC in the database file for many thousands of other inmates. (Declaration of Matthew Knowles, ¶ 13.)

30. In April 2012, Plaintiff applied to rent an apartment with a potential landlord identified as Eastchester Heights. (Declaration of Timothy St. George, ¶ 6, Exhibit C at pp. 4-5.)

31. As part of the application process, a leasing agent and client of SafeRent identified as Eastchester Heights requested a criminal background report from SafeRent. SafeRent's systems searched the Multistate Database and located the 1995 robbery conviction, which was returned. (Declaration of Matthew Knowles, ¶ 11.)

32. SafeRent listed the 1995 robbery conviction on the background screening report that was sent to Eastchester Heights in 2012, noting that the record was from the "Queens, NY" criminal court and that the record had been provided to SafeRent by the "NYDOC." (Declaration of Timothy St. George, ¶ 9, Exhibit F.)

33. SafeRent has no record of any email, communication, or other document from the NYDOC, either prior to April 2012 or thereafter, regarding the 1995 robbery conviction. (Declaration of Matthew Knowles, ¶ 11.)

34. Plaintiff did not utilize the dispute process under NY CLS Correc. Appx. § 5.51 with respect to the 1995 robbery conviction from the time that the record was sealed in 2009 until it was reported by SafeRent in April 2012. (Declaration of Timothy St. George, ¶ 6, Exhibit C at pp. 4-5.)

35. At the time that the criminal background screening report was sent to Eastchester Heights by SafeRent in April 2012, Plaintiff's 1995 robbery conviction was still being reported on the official website of the NYDOC. (Declaration of Timothy St. George, ¶¶ 7-8, Exhibit D at pp. 5-6; Exhibit E at pp. 4-5.)

36. During the discovery period, Plaintiff served no expert disclosures. (Declaration of Timothy St. George, ¶ 10.)

37. During the discovery period, Plaintiff did not depose the New York Department of Corrections or obtain any other discovery regarding its database of criminal offender records. (Declaration of Timothy St. George, ¶ 11.)

Dated: New York, New York
February 9, 2017

TROUTMAN SANDERS LLP

By: /s/ Timothy J. St. George
TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
Tel.: (212) 704-6440
Fax: (212) 704-5913

Alan D. Wingfield (*pro hac vice*)
David N. Anthony (*pro hac vice*)
Timothy J. St. George (*pro hac vice*)
1001 Haxall Point
Richmond, VA 23219
Tel: (804) 697-1650
Fax: (804) 698-5118

*Attorneys for Defendant*