**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
                                                               :
                                                               :
**ABDULLAH JAMES GEORGE WILSON, on**                           :
**behalf of himself and others similarly situated,**           :
                                                               :     **C.A. No. 14-CV-2477 (JPO) (RLE)**
                                                               :
                **Plaintiffs,**                                :
                                                               :     **PLAINTIFF'S RESPONSE IN**
                                                               :     **OPPOSITION TO DEFENDANT'S**
             **- against -**                                   :     **MOTION FOR PARTIAL**
                                                               :     **SUMMARY JUDGMENT**
                                                               :
**CORELOGIC SAFERENT, LLC**                                    :
                          **Defendant.**                       :
                                                               :
                                                               :
-------------------------------------------------------------- x

**LEGAL ACTION CENTER**
Monica Welby (MW-7373)
Sally Friedman (SF-3344)
225 Varick Street, Suite 402
New York, NY  10014
Tel: (212) 243-1313
Fax: (212) 675-0286
mwelby@lac.org
sfriedman@lac.org

**FRANCIS & MAILMAN, P.C.**
James A. Francis (*pro hac vice*)
David A. Searles (*pro hac vice*)
Lauren Brennan *(pro hac vice)*
100 S. Broad Street, Suite 1902
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff and the Class*

Dated: March 17, 2017

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.     INTRODUCTION ................................................................................................. 1

II.    UNDISPUTED FACTS ....................................................................................... 3

     A.    DOCCS Is Not Vested With The Statutory Authority To Maintain Criminal Record Information In New York ......................................................... 3

     B.    DOCCS Is Known To Be Inherently Unreliable As A Database For Background Reports ....................................................................................... 5

     C.    SafeRent Knowingly Uses Outdated Information From The DOCCS Database When It Knows That More Accurate And Up-To-Date Sources Exist ............................................................................................................... 6

III.   FACTUAL DISPUTES ...................................................................................... 8

     A.    SafeRent Does Not Obtain "Criminal Records" From The DOCCS Database And Its "Quality Assurance Policies" Result In The Material Manipulation Of The Information Obtained ........................................................ 8

          1.    The Information Relevant to This Matter is Not a "Criminal Record," But Rather Inmate Identification Information ............................ 8

          2.    SafeRent Does Not Obtain Records from a Government Agency .............. 9

     B.    SafeRent Receives Updates From DOCCS As Infrequently As Twice A Year ............................................................................................................ 10

     C.    DOCCS Does Not Maintain Criminal Records ................................................ 11

     D.    Irrespective Of SafeRent's Capacity To Correctly Transfer Information From The DOCCS Database To Its Own, It Never Checks The Underlying Court Records When Preparing Instant Background Checks Like Plaintiff's .................................................................................................... 11

IV.   LEGAL STANDARD ....................................................................................... 12

V.    ARGUMENT .................................................................................................... 13

     A.    Because SafeRent Did Not Rely Upon Court Records To Obtain Information On Plaintiff, It May Not Rely Upon the Seventh Circuit Decision In Henson ......................................................................................... 13

i

B.   Whether SafeRent's Reliance On Non-Court Records Is Reasonable Is A Question For The Jury ......................................................................................... 15

C.   Plaintiff Has Presented Evidence Of The Unreasonableness Of SafeRent's Procedures In The Form Of Statutory Authority, Deposition Testimony From SafeRent And The McGrath Declaration .................................................... 16

VI.   CONCLUSION............................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Frost v. Experian Information Systems, Inc.*, 1998 WL 765178 (S.D.N.Y. Oct. 30, 1998)......... 15

*Haro v. Shilo Inn*, 2009 WL 2252105 (D. Or. July 27, 2009) ...................................................... 15

*Henderson v. CoreLogic National Background Data, LLC*, 161 F. Supp. 3d 389 (E.D. Va. 2016) ................................................................................................................................. 17

*Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994)........................................... 13, 14, 15

*Houston v. TRW Information Services, Inc.*, 1989 WL 59850 (S.D.N.Y. May 1, 1989).............. 15

*Moore v. First Advantage Enter. Screening Corp.*, 2013 WL 1662959 (N.D. Ohio Apr. 17, 2013)..................................................................................................................... 15

*Nguyen v. Ridgewood Sav. Bank,* 2015 WL 2354308 (E.D.N.Y. May 15, 2015) ....................... 12

*Ogbon v. Beneficial Credit Servs., Inc.*, 2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013).......... 12, 16

*Poore v. Sterling Testing Sys. Inc.*, 410 F. Supp. 2d 557 (E.D. Ky. 2006).................................. 17

*Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183 (E.D. Va. 2015) ....................................... 12

*Stewart v. Credit Bureau, Inc.*, 734 F.2d 47 (D.C.Cir.1984) ....................................................... 12

*Taylor v. First Advantage Background Services Corp.*, --- F.Supp.3d ---, 2016 WL 4762268 (N.D. Cal. Sept. 13, 2016) ...................................................................... 12, 14

*Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824 (E.D.N.Y. 1994).............. 12

### Statutes

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ......................................................... *passim*

    15 U.S.C. § 1681e(b) ...................................................................... 2, 12, 13, 14, 17

    15 U.S.C. § 1681k(a) ................................................................................................ 17

New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-j(e)...................................... 2, 8

N.Y. Correct. Law § 29 (McKinney)............................................................................................. 3

N.Y. Exec. Law § 837(6) .............................................................................................................. 4

N.Y. Exec. Law § 845-b ................................................................................................................ 4

Plaintiff Abdullah James George Wilson, by counsel, hereby responds in opposition to Defendant's Motion for Partial Summary Judgment, stating as follows:

## I.   <u>INTRODUCTION</u>

The Complaint in this case alleges that on April 16, 2012, Plaintiff Wilson applied for and was offered a one-bedroom apartment at the Eastchester Heights apartment complex in Bronx, New York, subject to an approved credit check.  Mr. Wilson paid the leasing agent $50 for the credit check.

At the request of the leasing agent, Defendant CoreLogic SafeRent, LLC ("SafeRent") prepared and sold a Lease Decision report on Mr. Wilson dated April 16, 2012.  *See* accompanying Declaration of James A. Francis ("Francis. Dec."), at Ex. 1., document bearing Bates stamps CL-W000036-46.  The Lease Decision report included Mr. Wilson's credit history and credit score, both of which were strong and well within the range required in order for his application to be approved.

However, in the Lease Decision, SafeRent reported unlawful and inaccurate information. Misrepresenting that it had located a conviction record in a criminal court - "RECORD FOUND – CRIMINAL COURT ACTION" - SafeRent reported a felony conviction for robbery in 1995 as belonging to Mr. Wilson.  The report of a conviction was inaccurate.  SafeRent's reporting of the purported conviction violated the law for multiple reasons:

- The conviction had been vacated, and the charges had been dismissed and sealed years before, on or about October 19, 2009.

- No court or court record was reporting the conviction record at the time that SafeRent sold its report to Eastchester Heights.

- The report misrepresented that it contained a criminal court record, when in fact what it was reporting was a record of state imprisonment from the New York State Department of Corrections and Community Supervision ("DOCCS"), which maintains a website that is neither a court nor a source of criminal court records.

Based on the inaccurate and unlawfully reported information in the Lease Report, a representative of Eastchester Heights advised Mr. Wilson that he would not be allowed to rent the apartment.

Plaintiff contends in this case that because Defendant failed to follow any reasonable procedure that assured maximum possible accuracy, as required by the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b) ("FCRA"), Defendant's Lease Decision improperly reported a felony conviction that had been dismissed and sealed for several years. The Complaint asserts counts under section 1681e(b) of the FCRA (Count II) and under the state law counterpart, the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-j(e) (Count III).

Defendant has now moved for partial summary judgment seeking dismissal of Counts II and III. In essence, Defendant contends that a reasonable jury could not help but find that it followed reasonable procedures to assure maximum possible accuracy of the information it reported about Mr. Wilson. However, the undisputed facts of record do not support that contention and a jury could find quite the opposite.

This Court should reject SafeRent's attempts to clothe the source of its inaccurate background information – the DOCCS outdated prisoner and parolee database – with the legitimacy of actual court records that reliably record criminal convictions *and their subsequent sealing*. It is undisputed that SafeRent did not use court records of criminal convictions to populate its database and to generate a report on Plaintiff and certain members of the class. A genuine issue of material fact exists as to whether Defendant's reliance upon an infrequently updated, unreliable secondary source of information, which information it misrepresented in the reports generated therefrom, instead of the actual court records, is "reasonable" under the FCRA. This is an issue for the jury and not one for determination as a matter of law. Plaintiff has presented sufficient

2

evidence that would allow the jury to find that SafeRent's exclusive reliance upon its data source was unreasonable.

SafeRent's Motion for Partial Summary Judgment should be denied.

## II.   UNDISPUTED FACTS[1]

### A.   DOCCS Is Not Vested With The Statutory Authority To Maintain Criminal Record Information In New York

SafeRent contends that it is undisputed that DOCCS is the New York official repository of current records of criminal convictions.  Def. Mem. at 4-6.  To the contrary, New York law is clear that the statutory authority to maintain criminal record information in New York does not lie with DOCCS.

SafeRent's inaccurate report concerning Mr. Wilson was acquired from the public database of DOCCS.  SafeRent acquired faulty, prejudicial information because the statutory authority to maintain criminal history record information in New York is vested elsewhere.

The explicit language of Section 29 of the New York Correction Law does not charge DOCCS with maintaining criminal conviction data.  Plaintiff's Statement, ¶ 38; Francis Dec. at Ex. 2 (Division of the Budget, Budget Report on Bills, S 10672, Bill Jacket, c. 654, L. 1974).  In fact, when Section 29 was enacted in 1974, New York law was modified to "transfer responsibility for the general criminal statistics functions from the Department of Correctional Services to the Division of Criminal Justices Services, to centralize in one agency all of the responsibilities for the analysis of data on the criminal justice function."  Plaintiff's Statement, ¶ 39.  The legislative history makes it clear that the "new section 29" confined statistical collection and reporting

---

[1]      The facts discussed herein are set forth in Plaintiff's Response To Defendant's Statement Of Undisputed Material Facts Pursuant To Local Rule 56.1 And Plaintiff's Statement Of Additional Disputed Material Facts Pursuant To Local Rule 56.1(b) ("Plaintiff's Statement"), filed concurrently herewith.

responsibilities to data about individuals incarcerated in State prisons and that "other statistical reporting programs, primarily related to arrest and disposition data, would be transferred to DCJS." *Id.,* p. 1.

The New York State Division of Criminal Justice Service ("DCJS") – not DOCCS – is vested with the statutory authority to maintain criminal history record information in New York State.  N.Y. Exec. Law § 837(6).  DCJS, however, is only permitted to release information to entities have the statutory authority to obtain such information.  N.Y. Exec. Law § 837(6); *see also* N.Y. Exec. Law § 845-b, DCJS Access to Criminal History Records, http://www.criminaljustice.ny.gov/ojis/recordreview.htm.

For those without statutory authority, the New York State of Office of Court Administration ("NYOCA") – not DOCCS – provides an on-line New York Statewide criminal history record search for conviction records in New York State. https://www.nycourts.gov/APPS/chrs/onlinedirectaccess.shtml.  Even NYOCA, however, makes it clear to requesters that its results are not certified and "should not be confused with a Certificate of Disposition which can only be issued by the court of original jurisdiction," meaning that the court is the most reliable source for conviction disposition information.  *Id.*

Despite its representation to the contrary in the body of the Lease Decision, there is no dispute that SafeRent did *not* check the actual court records before reporting Mr. Wilson's felony conviction that had been dismissed and sealed.  Francis Dec., Ex. 3, REDACTED ████████.  Instead, it relied, improperly and recklessly, on the DOCCS database as

its sole source of information.  *Id.*[2]  As demonstrated by the record in this case, that reliance was not reasonably designed to assure maximum possible accuracy.

**B.    DOCCS Is Known To Be Inherently Unreliable As A Database For Background Reports**

The Associate Commissioner of Population Management at DOCCS, Anne Marie McGrath, submitted a Declaration in this case, which is attached to the Francis. Dec. at Ex. 5 ("McGrath Dec.").  The McGrath Dec. underscores that the DOCCS data base is inherently unreliable as a database for background reports such as the one SafeRent generated about Mr. Wilson, for a number of reasons:

- DOCCS only maintains, reports and provides incarceration and parole data relating to an individual's confinement in a New York State prison.  McGrath Dec., ¶ 5.

- With regard to an underlying criminal conviction, DOCCS only maintains, reports and/or provides information about the nature of the crime and the class.  *Id.*

- DOCCS does not maintain, report or provide other information, such as the date of conviction, date of offense, date of sentence, criminal case number associated with the conviction, or prior criminal conviction history of the individual.  *Id.*

- DOCCS does not represent that the information it makes available via its web-based system is current, complete and accurate, and does not allow users to use the inmate and parolee lookup systems for commercial purposes.  *Id.*, at ¶ 8.

Plaintiff's Statement, at ¶¶ 58-63.

Specifically, with respect to Mr. Wilson in this case, Ms. McGrath confirmed that much of the information contained in SafeRent's background report, which was compiled solely by use of the DOCCS database, was inaccurate.  Plaintiff's Statement ¶¶ 64- 65, McGrath Dec. at ¶¶ 15-17.

---

[2]    Tellingly, after Mr. Wilson disputed the inaccurate report, REDACTED

**C.     SafeRent Knowingly Uses Outdated Information From The DOCCS Database When It Knows That More Accurate And Up-To-Date Sources Exist**

Further, the fact that DOCCS, as well as other state databases utilized by Defendant, was well known as an unreliable source for current public record information was REDACTED

REDACTED. Plaintiff's Statement, ¶¶ 48-54.  REDACTED

REDACTED

REDACTED





Plaintiff's Statement at ¶¶ 45-56.

### III.   **FACTUAL DISPUTES**

**A.    SafeRent Does Not Obtain "Criminal Records" From The DOCCS Database And Its "Quality Assurance Policies" Result In The Material Manipulation Of The Information Obtained**

**1.    The Information Relevant to This Matter is Not a "Criminal Record," But Rather Inmate Identification Information**

SafeRent's attempts to equate information from a "governmental agency," DOCCS, with court records maintained by a court clerk should be rejected.  SafeRent's equivocation must fail because it relies upon the mistaken assumption that the DOCCS inmate and parolee identification database is an accurate source of information about the underlying criminal convictions of the individuals represented in the database.  Moreover, SafeRent manipulates the data received from the DOCCS database and shoehorns it into a set of preexisting categories in its Multistate Database that are not analogous to the original DOCCS categories.  The Court should find that SafeRent's reliance upon the DOCCS inmate database to supply records of criminal convictions in New York in its Multistate Database presents a genuine issue of material fact as to whether its procedures are reasonably designed to assure maximum possible accuracy under the FCRA and the New York counterpart.

## 2.      SafeRent Does Not Obtain Records from a Government Agency

SafeRent also manipulates and alters DOCCS data by knowingly misrepresenting the incarceration data as conviction data when it knows it is not.  SafeRent's argument that it does not alter the "substance" of the data should be rejected because the record shows that SafeRent does in fact change the category under which it reports certain data points derived from the DOCCS database.[3]  Not only did SafeRent improperly report Mr. Wilson's dismissed and sealed case but it also inaccurately reported the details of the conviction.  As Ms. McGrath of DOCCS unequivocally sets forth in her Declaration, DOCCS does not maintain or report details of the underlying criminal conviction leading to an individual's incarceration in New York state prison. The incarceration data SafeRent obtained from DOCCS included Mr. Wilson's Department of Corrections identification number (his "DIN" number), the date Mr. Wilson was received into DOCCS custody as 12/05/1995, and the underlying nature of the crime of incarceration as robbery 2nd, Class C.  Francis Dec., Ex. 1.  SafeRent, however, misrepresented and inaccurately reported Mr. Wilson's DIN number as his court case number.  *Id.*  SafeRent also misrepresented and inaccurately reported the date Mr. Wilson was received into DOCCS custody (12/5/1995) as the file date on his court record, his date of conviction, and his sentence date.  *Id*.  The file date on Mr. Wilson's court record was not 12/5/1995, as Mr. Wilson was convicted in October of 1995 and sentenced in November of 1995.  SafeRent purposefully manipulates and alters incarceration data and misrepresents the data as a record of a criminal conviction without actually going to the

---

[3]      To understand why this is important, it is enough to imagine the difference between placing the label "First Name" over the data point "John" and the label "Middle Name" over the same data point.  Fundamentally different meaning is ultimately conveyed even though the underlying data, "John," remains unaltered.

courthouse to obtain any information to corroborate what it is reporting.  Plaintiff's Statement, ¶ 54.  Such procedures should not be deemed reasonable as a matter of law.

SafeRent's disregard for the integrity of the data it obtains from the DOCCS has another pernicious side effect: it renders the data useless for further investigation or verification of the underlying criminal conviction.  In the event that SafeRent were to observe reasonable procedures and attempt to corroborate the DOCCS data it received and translated into its Multistate Database, it would have misled itself into believing that Mr. Wilson's DIN was his case number.  No one at the Queen's County Clerk of Court's office would be able to respond to queries concerning a DIN number, rendering the number nonsensical noise.  Moreover, SafeRent would not have been able to use the date of Mr. Wilson's entry into incarceration to corroborate his conviction because he was not convicted or sentenced on December 5, 1995, but rather months before.  In the case of Mr. Wilson, this is precisely what happened.[4]

**B.**    <u>**SafeRent Receives Updates From DOCCS As Infrequently As Twice A Year**</u>

SafeRent's representations about how frequently it updates its Multistate Database are misleading.  For the purposes of this case, the relevant inquiry is the frequency at which SafeRent updates the records in its Multistate Database derived from the DOCCS database.  SafeRent only acquired updates for the entries in its Multistate Database derived from the DOCCS database as those updates were provided by DOCCS.  Plaintiff's Statement, ¶¶ 52-54.  SafeRent obtains updated DOCCS data on a quarterly–or less frequent–basis.  *Id.*, ¶ 52.  Some information in SafeRent's Multistate Database derived from the DOCCS database is more than six months old at the time SafeRent includes it in consumer reports.  *Id.*

---

[4]      REDACTED

Plaintiff's Statement at ¶ 57.

Whether or not maintaining a database that is only updated as infrequently as twice a year is "reasonable" under the FCRA is a question for the jury.

## C.    DOCCS Does Not Maintain Criminal Records

Contrary to its characterization, SafeRent does not acquire "criminal records" from DOCCS.  Rather, what it acquires is incarceration information about incarcerated individuals and individuals released from prison on parole.  Plaintiff's Statement, ¶¶ 58-63.

As the McGrath Declaration makes clear, DOCCS does not maintain, report or provide other information, such as the date of conviction, date of offense, date of sentence, criminal case number associated with the conviction, or prior criminal conviction history of the individual. DOCCS does not represent that the information it makes available via its web-based system is current, complete and accurate, and does not allow users to use the inmate and parolee lookup systems for commercial purposes.  DOCCS is not a repository for criminal conviction information in New York State.  DOCCS does not maintain, report, or provide data relating to the criminal conviction history of individuals in New York State.  Instead, DOCCS merely maintains, reports and provides incarceration and parole data relating to an individual's confinement in a New York State prison.  Plaintiff's Statement, ¶¶ 58-63.

## D.    Irrespective Of SafeRent's Capacity To Correctly Transfer Information From The DOCCS Database To Its Own, It Never Checks The Underlying Court Records When Preparing Instant Background Checks Like Plaintiff's

In its Memorandum, at 2, SafeRent attempts to conflate a technical consistency with a factual accuracy that is not supported by the record.  SafeRent claims that it's "quality assurance" procedures are designed to consistently transfer the information it receives from sources like DOCCS into its Multistate Database.  That misses the point, and presents another jury question.

What a jury should be permitted to review is that, from the limited and necessarily incomplete data found on DOCCS, SafeRent improperly and mistakenly comes up with the

existence of valid criminal charges and convictions.  ██REDACTED████████████

████████████████████████████████████████████████████████████████

████████████████████████████████   Plaintiff's Statement, ¶¶ 54-55.  Whether this

is a reasonable procedure to assure maximum possible accuracy is clearly disputed.

## IV.   LEGAL STANDARD

To defeat a motion for summary judgment on a section 1681e(b) claim, a plaintiff "must

minimally present some evidence from which a trier of fact can infer that the consumer reporting

agency failed to follow reasonable procedures in preparing a credit report." *Whelan v. Trans Union*

*Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (citing *Stewart v. Credit Bureau,*

*Inc.*, 734 F.2d 47, 51 (D.C.Cir.1984)).[5]  "Whether or not the credit reporting agency followed

reasonable procedures 'will be a jury question in the overwhelming majority of cases.'"  *Ogbon v.*

*Beneficial Credit Servs., Inc.*, No. 10 CIV. 3760 PAE, 2013 WL 1430467, at *7 (S.D.N.Y. Apr. 8,

2013); *Taylor v. First Advantage Background Services Corp.*, --- F.Supp.3d ---, 2016 WL

4762268, at *10 (N.D. Cal. Sept. 13, 2016) (same); *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D.

183, 203–04 (E.D. Va. 2015) ("Weighing the credibility of the evidence and the reasonableness of

the procedures is a responsibility reserved for jury" in section 1681e(b) claim).

---

[5]      Defendant's citation to *Nguyen v. Ridgewood Sav. Bank* does not provide any authority for
the summary judgment standard that the Court should apply in this matter.  The *Nguyen* decision
is a ruling on defendants' motions to dismiss numerous federal and state law claims brought by
*pro se* plaintiffs and does not address the summary judgment standard for section 1681e(b) claims
at all.  The Nguyen plaintiffs' section 1681e(b) claims were dismissed, however, because the
plaintiffs "fail[ed] … to make any allegations relating to the procedures Trans Union, Equifax or
Experian instituted to ensure the accuracy of the information in Mr. Nguyen's credit reports …."
*Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-1058 MKB, 2015 WL 2354308, at *4 (E.D.N.Y.
May 15, 2015).  In this respect, the decision is inapplicable to the case at bar.

# V.    ARGUMENT

## A.    Because SafeRent Did Not Rely Upon Court Records To Obtain Information On Plaintiff, It May Not Rely Upon the Seventh Circuit Decision In *Henson*

The Second Circuit has not made sweeping decisions pertaining to the viability of section 1681e(b) claims like Plaintiff's[6] and SafeRent's reliance upon of the Seventh Circuit's decision in *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994), is inappropriate.  In addition to being from another Circuit, *Henson* is distinguishable from the case at bar primarily because SafeRent does not populate its Multistate Database with court records, but rather with wholly different prison inmate population information derived exclusively from the DOCCS database.

In *Henson*, the Seventh Circuit was presented with an unusual fact pattern: a court clerk had made an erroneous notation in the court's own records indicating that a money judgment had been entered against Mr. Henson, the plaintiff.  29 F.3d at 283.  This was inaccurate, as a money judgment had been entered against the plaintiff's brother only.  *Id*. at 282-83.  The defendant consumer reporting agency in *Henson* acquired its information about the erroneous judgment from the court's Judgment Docket.[7]  *Id*. at 285.  The *Henson* court simply held that, "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained *from a court's Judgment Docket*, absent prior notice form the consumer the information

---

[6]    Defendant can only cite to two district court cases from the Southern District of New York, each of which is distinguishable from the facts of Plaintiff's claim because, as noted, they rely upon the Seventh Circuit's decision in *Henson*.

[7]    What the "Judgment Docket" is was not well-defined in the court's decision, but it is clear that it is a summary of events that memorialize chronological events in litigation actions separate from the actual hardcopy orders signed by the judges and stored in the clerk's office.  *Henson*, 29 F.3d at 285 ("Under Indiana law, the clerk enters the judgment in the 'Record of Judgments and Orders.'  It is the physical act of placing the rendered judgment into the "Record of Judgments and Orders" that constitutes the official entry of judgment.  The clerk simply "note[s] the entry of judgment in the Chronological Case Summary and Judgment Docket.'") (internal citations omitted).

may be inaccurate." *Id*. at 285 (emphasis added). Thus, the *Henson* court's holding with respect to the plaintiff's section 1681e(b) claim is far narrower than Defendant's representation of immunity to a consumer reporting agency ("CRA") which obtains consumer data from "government documents." Defendant's reading of *Henson* is overbroad and should be rejected.[8]

In the case at bar, SafeRent did not obtain information about Plaintiff from a court's judgment docket or from any court record whatsoever; rather, it obtained the information from the DOCCS database, a separate source limited to incarceration information about individuals incarcerated or on parole in New York. SafeRent never uses court records like those at issue in *Henson* for populating its Multistate Database with New York criminal records because obtaining them would be too costly. Plaintiff's Statement, ¶ 48. SafeRent prefers to assume that information available in the DOCCS database is indicative of a criminal conviction without further reference to county court level documents. *Id*., ¶ 50.

This Court should also find that the data SafeRent derived from the DOCCS database is sufficiently unreliable to warrant deference pursuant to *Henson*. The evidence of record demonstrates that SafeRent – and every other user of the DOCCS data – was or should have been on notice that DOCCS did not warrant that the information available was current, complete and accurate and noted that the information was not to be used for commercial purposes. Plaintiff's Statement, ¶¶ 38-44, 49-53, 58-63. Under circumstances like these, the *Henson* court would likely have doubted that the source of the information was "presumptively reliable" and thus likely

---

[8]     *Henson* was also recently rejected in another section 1681e(b) summary judgment case, *Taylor v. First Advantage Background Services Corp*., 2016 WL 4762268 (N.D. Cal. Sept. 13, 2016). In that case, the court denied the defendant's motion for partial summary judgment where, similar to this case, the defendant reported criminal convictions without reviewing "the face of the court documents." 2016 WL 4762268, at *11.

require going "beyond the face" of the data derived from that source. *Henson* and its progeny[9]

cited by Defendant are distinguishable and inapplicable to the facts of this case.

SafeRent is not entitled to judgment as a matter of law on the basis of its reliance upon

information obtained from the DOCCS database.

## B.   Whether SafeRent's Reliance On Non-Court Records Is Reasonable Is A Question For The Jury

The Court should defer to the finder of fact with respect to the reasonableness of SafeRent's

procedures.  Plaintiff has produced evidence that demonstrates the existence of a genuine issue of

---

[9]       *Frost v. Experian Information Systems, Inc.* relies directly upon *Henson* for support and involves a CRA's obtaining information directly from court records.  *Frost*, 1998 WL 765178, at *3 (S.D.N.Y. Oct. 30, 1998).

    *Houston v. TRW Information Services, Inc.*, No. 88 Civ. 0186, 1989 WL 59850 (S.D.N.Y. May 1, 1989), predates *Henson*, but relies upon an identical rationale.  Because "court personnel failed to enter the vacatur against Houston in the Judgment Docket Book and thus TRW's vendor did not discover or report it[,]" the "omission of the vacatur was an unfortunate error for which TRW is not liable." *Id*. at *1-2.

    *Moore v. First Advantage Enter. Screening Corp.*, No. 4:12 CV00792, 2013 WL 1662959 (N.D. Ohio Apr. 17, 2013), cites *Henson* and notes that there was no evidence that the defendant "did anything other than ask the Angelina County clerk to merely recite what was in the court's files." *Id*. at *6.  Here, by contrast, SafeRent made no inquiries to the Queens County Supreme Court Clerk, but derived all of its information on Plaintiff from the DOCCS database without further investigation or verification of that information.

    *Haro v. Shilo Inn*, No. CIV. 08-6306-AA, 2009 WL 2252105, at *3 (D. Or. July 27, 2009), also relies upon *Henson* and is therefore distinguishable.  The *Haro* plaintiff's criminal history was obtained "from the Oregon Judicial Information Network (OJIN), which 'contains the judgment dockets and official Register of Actions from Oregon state courts ….'  The OJIN website explains that the information is provided from the Oregon Judicial Department database and 'does not constitute the official record,' which is located at "the court site where the case was filed.'" (citation omitted).

    Defendant's additional citations in note 3 of its Memorandum to cases in which CRAs relied upon information given to them directly by Bank of America only proves Plaintiff's point: information received from the originator of the information, *e.g.*, bank records or court clerk records, is inherently more reliable than information derived from a third party that does not profess to maintain or access the records of the originating entity.

15

material fact with respect to the reasonableness of SafeRent's procedures.  Plaintiff's Statement,
¶¶ 38-44, 49-55, 58-63.

SafeRent's arguments by way of reference to the New York statutes and the record keeping
policies of DOCCS should be disregarded.  Nothing within the statutes cited by SafeRent gives
any credence to SafeRent's conclusion that the DOCCS database contains actual criminal records.
That DOCCS may have included out of date information in its database does not insulate SafeRent
from liability because the DOCCS database never suggested that it was a repository of the records
of criminal convictions.

**C.     Plaintiff Has Presented Evidence Of The Unreasonableness Of SafeRent's
        Procedures In The Form Of Statutory Authority, Deposition Testimony From
        <u>SafeRent And The McGrath Declaration</u>**

Plaintiff is not required to provide proof at this stage of the case that SafeRent's procedures
are unreasonable, but to provide sufficient evidence that a jury might so find them.[10]  Plaintiff has
done so, because New York statutory authority, the McGrath Declaration and deposition testimony
from SafeRent clearly demonstrate that the DOCCS database is not a reliable source of information
on criminal convictions.  Plaintiff's Statement, ¶¶ 38-44, 46-56, 58-63.  This Court should allow a
jury to decide the question whether SafeRent's attempts to cut corners and save money by avoiding

---

[10]     *Ogbon v. Beneficial Credit Servs., Inc.*, cited by Defendant, is distinguishable from the case
at bar because unlike Plaintiff herein, the *Ogbon* plaintiff quite literally failed to provide any
evidence of the CRA defendant's unreasonableness, having failed to comply with Local Rule 56.1.
*Ogbon*, 2013 WL 1430467, at *1.  The *Ogbon* court noted that "Ogbon's Local Rule 56.1 statement
completely fails to comply with [the Rule's] requirements:  Its numbered paragraphs do not
correspond to defendants' statement and are utterly unresponsive to that statement; it lacks citation
to a single piece of documentary evidence; and it consists of conclusory statements unsupported
by any record evidence.  Ogbon's failure is particularly egregious in light of the fact that the Court
pointedly drew the requirements of Local Rule 56.1 to Ogbon's counsel's attention at the
conference held immediately prior to the filing of this motion."  *Id*.  This Court should not afford
any weight to Defendant's citation to *Ogbon*.

collecting criminal conviction records located in the local courts is a reasonable method of assuring maximum accuracy.

In *Henderson v. CoreLogic National Background Data, LLC*, 161 F. Supp. 3d 389 (E.D. Va. 2016), the court held that the plaintiff had presented sufficient evidence to allow a jury to find that the defendant had failed to maintain "strict procedures" required by section 1681k(a) and denied summary judgment to a sister business unit of SafeRent.  The *Henderson* court observed with approval that federal courts have noted that the "strict procedures" requirement of section 1681k(a) is necessarily more stringent than the "reasonable procedures" required by section 1681e(b).  *Henderson*, 161 F. Supp. 3d at 404 (*citing Poore v. Sterling Testing Sys. Inc.*, 410 F. Supp. 2d 557, 572 (E.D. Ky. 2006)).

Similarly here, Plaintiff has submitted ample evidence in conjunction with this Opposition to warrant denial of Defendant's Motion.

## VI.    CONCLUSION

SafeRent has apparently decided to run the risk of using information that was not derived from the New York courthouse records, all the time while it was aware of the existence of better options, *i.e*., the clerk's records themselves.  Instead, SafeRent intentionally refused to populate the Multistate Database with more reliable records, for purely financial reasons.  Plaintiff's claim should proceed to the jury for the determination of whether SafeRent's procedures were reasonably designed to assure maximum possible accuracy of the information concerning the individuals on whom it reported.

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment should be denied.

Dated: March 17, 2017

**LEGAL ACTION CENTER**

Monica Welby (MW-7373)
Sally Friedman (SF-3344)
225 Varick Street, Suite 402
New York, NY  10014
Tel: (212) 243-1313
Fax: (212) 675-0286
mwelby@lac.org
sfriedman@lac.org

**FRANCIS & MAILMAN**

By:     _s/ James A. Francis_
James A. Francis (*pro hac vice*)
David A. Searles (*pro hac vice*)
Lauren Brennan (*pro hac vice*)
100 S. Broad Street, Suite 1902
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff and the Class*