UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABDULLAH JAMES GEORGE
WILSON,
                          Plaintiff,

                  -v-

CORELOGIC SAFERENT, LCC,
                          Defendant.

14-CV-2477 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Abdullah James George Wilson filed this action under federal and state fair credit reporting laws against Corelogic SafeRent, LLC ("SafeRent"), a company that provides background reports to landlords. Wilson's application to lease an apartment was rejected on the basis of a SafeRent report indicating that he had been convicted of robbery in 1995. That conviction, however, had been vacated in 2009 on habeas review.

SafeRent moves for partial summary judgment on two of Wilson's fair credit reporting claims, and Wilson moves for class certification. For the reasons that follow, both motions are denied.

**I.    Background**

The following facts taken from the parties' respective statements of undisputed material facts and are not subject to a genuine dispute unless otherwise noted.

SafeRent assists leasing agents in conducting background screenings for prospective tenants. (Dkt. No. 126 ("Pl.'s SUF") ¶ 1.) It offers a suite of services, including the compilation

1

of a "criminal public record background screening report."[1] When a client requests such a report, SafeRent searches its "Multistate Database." (*Id.* ¶ 3.) The information in the database is derived from many sources, including the New York Department of Corrections and Community Supervision ("NYDOC"). (Def.'s Reply SUF ¶ 47; Pl.'s SUF ¶ 11.)

The NYDOC, a state agency with jurisdiction over incarcerated individuals, is statutorily mandated to "collect, maintain, and analyze statistical and other information and data with respect to persons subject to the jurisdiction of the department, including but not limited to . . . the criminal history of such persons." N.Y. Correct. Law § 29(1). NYDOC sends records to SafeRent via a "full file replacement": in other words, it sends a "full, updated database of records each time that a new file is made available to the public," and that full file is "completely replaced with each successive update." (Pl.'s SUF ¶ 12.) When NYDOC makes an updated database file publicly available, SafeRent "procures the new version[,] . . . and it then replaces all of the existing NYDOC records in the Multistate Database with the new file." (*Id.* ¶ 14.) Although SafeRent asserts that NYDOC generally makes its database file available to the public "every 3-4 months," it admits that the frequency of these updates is sporadic and unreliable: "[I]t could be three months. It could be four months. It could be six months." (Def.'s Reply SUF ¶ 52–53.) Nonetheless, the NYDOC database file "actively accounts for post-filing developments in its criminal records, including post-conviction changes." (Pl.'s SUF ¶ 15.) For example, NYDOC represents that "when a person has had a conviction reversed, all official records are then sealed pursuant to Criminal Procedure Law § 1650.50 and, accordingly, the [NYDOC] deletes all such information from its database." (Pl.'s SUF ¶ 24.)

---

[1] Although SafeRent describes the information contained in these reports as "criminal public records," Plaintiff disputes whether, as a factual matter, the records reported by SafeRent actually qualify as "criminal records." (E.g., Pl. SUF ¶ 2).

In 1995, Wilson was charged with robbery and convicted in Queens County Criminal Court. (Pl.'s SUF ¶ 25.) He was incarcerated for that crime, and NYDOC maintained a record of that conviction. (*Id.*) In 2009, however, Wilson successfully petitioned for a writ of habeas corpus. *See Wilson v. Mazzuca*, 570 F.3d 490, 508 (2d Cir. 2009). Accordingly, his conviction was vacated and sealed pursuant to New York Criminal Procedure Law § 160.50. (Pl.'s SUF ¶ 26.) Nonetheless, the NYDOC database file, which was included in SafeRent's Multistate Database, apparently indicated that Wilson had been convicted of robbery. (Pl.'s SUF ¶ 28.)

In April 2012, Wilson applied to rent an apartment at Eastchester Heights, an apartment complex in the Bronx. (Pl.'s SUF ¶ 30.) As part of that application process, Eastchester Heights requested a criminal background report on Wilson from SafeRent. (Pl.'s SUF ¶ 31.) In response, SafeRent provided a report that listed the 1995 robbery conviction and identified NYDOC as the source of that information. (Pl.'s SUF ¶ 32). Specifically, in addition to listing Wilson's credit history and credit score, SafeRent's report stated, "RECORD FOUND – CRIMINAL COURT ACTION." (Def.'s Reply SUF ¶ 45.) Based on that report, Wilson was denied the apartment. (Dkt. No. 125 at 2.)

On April 9, 2014, Wilson filed his complaint in this putative class action, asserting five counts against SafeRent: (1) violation of section 380-j(a)(2) the New York Fair Credit Reporting Act ("NY-FCRA"), N.Y. Gen. Bus. Law § 380 e*t seq*.; (2) violation of section 1681e(b) of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.; (3) violation of section 380-j(e) of NY-FCRA; (4) violation of §1681i(a) of FCRA; and (5) violation of § 380-f of NY-FCRA. (Dkt. No. 1 at 7–14.) On August 7, 2014, the parties stipulated to dismissal of Count 1. (Dkt. No. 26.) Wilson filed a motion to amend his complaint on June 5, 2015, which was denied on February 8, 2016. (Dkt. Nos. 47, 72.) On February 9, 2017, SafeRent filed a motion for

partial summary judgment on Counts 2 and 3, and Wilson filed a motion for class certification. (Dkt. Nos. 104–105.)

## II. Motion for Partial Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *see Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

The movant's initial burden on summary judgment is to provide evidence on each element of his claim or defense illustrating his entitlement to relief. *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant makes this showing, the burden shifts to the non-movant to identify specific facts demonstrating a genuine issue for trial, i.e., that reasonable jurors could differ over the evidence. Fed. R. Civ. P. 56(f); *Anderson*, 447 U.S. at 250–51. The court should view all evidence "in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor," and a motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). At the same time, the non-moving party cannot rely upon mere "conclusory statements, conjecture, or speculation" to meet its burden. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996) (citing *Matsushita*, 475 U.S. at 587).

4

## B. Section 1681e(b)

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "FCRA provides a private right of action against businesses that use consumer reports but fail to comply" with a duty imposed by the Act. *Id.*; *see also Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693, 2016 WL 3538379, at *8 (S.D.N.Y. June 22, 2016) ("FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." (quoting *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995)) (internal quotation marks omitted)). If a FCRA violation is negligent, "the affected consumer is entitled to actual damages." *Safeco*, 551 U.S. at 53 (citing 15 U.S.C. § 1681*o*(a)). "By contrast, a plaintiff who prevails on a willfulness claim is entitled to (1) either actual damages *or* statutory damages between $100 and $1,000; (2) punitive damages; and (3) costs." *Wenning*, 2016 WL 3538379, at *8; *see also Northrop v. Hoffman of Simsbury, Inc.,* 12 F. App'x. 44, 50 (2d Cir. 2001).

The duty at issue in this case arises under 15 U.S.C § 1681e(b), which provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. 1681e(b). The elements of a *negligence* claim under this provision are "(1) inaccuracy, (2) failure to follow reasonable procedures, (3) actual damages, and (4) causation." *Wenning*, 2016 WL 3538379, at *8. "[T]he elements of a willfulness claim are (1) inaccuracy and (2) a failure to follow reasonable procedures that is (3) knowing or reckless." *Id.*[2]

---

[2] Wilson alleges that SafeRent's failure to follow reasonable procedures was not only negligent, but also willful (i.e., knowing or reckless). (Dkt. No. 2 at 8–9). SafeRent does

5

SafeRent contends that it is entitled to summary judgment on the question whether it followed "reasonable procedures." The Court concludes, however, that summary judgment is not appropriate because a genuine factual dispute exists as to the reasonableness of SafeRent's procedures.

"FCRA does not provide for strict liability for a CRA [credit reporting agency] that reports inaccurate information"; liability does not attach unless "the agency failed to follow reasonable procedures in generating the inaccurate report." *Wenning*, 2016 WL 3538379, at *16 (quoting *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994)) (quotation marks omitted). "Whether or not the credit reporting agency followed reasonable procedures 'will be a jury question in the overwhelming majority of cases.'" *Id.* (quoting *Gorman v. Experian Info. Sols., Inc.*, No. 07 Civ. 1846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008)); *see also Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (Because summary judgment is not appropriate unless the reasonableness of the CRA's procedures is "beyond question," reasonableness "is treated as a factual question even when the underlying facts are undisputed.") A CRA's procedures are unreasonable if the "potential harm from inaccuracy" outweighs the "burden on the agency of safeguarding against such inaccuracy." *Wenning*, 2016 WL 3538379, at *16 (quoting *Houston v. TRW Info. Servs., Inc.*, 707 F. Supp. 689, 693 (S.D.N.Y. 1989)).[3]

---

not seek summary judgment on the basis that its conduct was not willful, but instead argues only that its procedures were reasonable as a matter of law. (See Dkt. No. 108.) Consequently, because the Court concludes that a genuine factual dispute exists as to reasonableness, the question of willfulness, in addition that of reasonableness, will be determined by the factfinder at trial.

    [3] The Court notes that "case law reflects two diverging characterizations of the parties' respective burdens on summary judgment": on one hand, "[t]he D.C. Circuit has held that a plaintiff 'must minimally present some evidence from which a trier of fact can infer that

## C. Reasonableness of SafeRent's Procedures

SafeRent asserts that its procedures are reasonable as a matter of law because it relied on records obtained from the NYDOC, a governmental agency tasked with "collect[ing], maintain[ing], and analyz[ing]" the "criminal history" data of incarcerated persons. N.Y. Correct. Law § 29(1). In response, Wilson points to evidence of NYDOC's unreliability, which he claims is sufficient to permit a jury to conclude that SafeRent's reliance on the agency was unreasonable. For example, it is undisputed that the NYDOC generally updates its database only quarterly, and sometimes updates it only every six months. (Def.'s Reply SUF ¶¶ 52–54.) Nonetheless, according to Wilson, SafeRent "assumes, without reference to county court level records, that the existence of a [NYDOC] record . . . is indicative of a valid criminal conviction." *Id* ¶ 50. Finally, Wilson maintains that the NYDOC is responsible for statistical data relating only to individuals under its jurisdiction—i.e. incarcerated individuals—while the statutory authority to maintain criminal history record information, i.e., information relating to "arrest and

---

the consumer reporting agency failed to follow reasonable procedures in preparing a credit report.'" *Wenning*, 2016 WL 3538379, at *16 (quoting *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984)). On the other hand, the Ninth and Eleventh Circuits "have adopted a more plaintiff-friendly approach in which a plaintiff's demonstration of inaccuracies shifts the onus to the defense." *Id.* (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 965 (3d Cir. 1996) (interpreting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333–34 (9th Cir. 1995)), and *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)); *see also Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 416 (4th Cir. 2001) (noting that the circuits appear to be split on who bears the burden of proof on the issue of reasonableness).

As in *Wenning*, the Court need not resolve this question here because "the outcome is the same under either approach," 2016 WL 3538379, at *16: Summary judgment is not warranted. As explained below, the Court rejects SafeRent's contention that "Plaintiff has no[t] adduced evidence in discovery to support the alleged 'unreasonableness' of SafeRent's Reporting." (Dkt. No. 108 at 13.) The Court concludes that Plaintiff has submitted sufficient evidence to create a genuine factual dispute as to reasonableness, and therefore it need not decide how the burdens of production are properly allocated at summary judgment in § 1681e(b) cases.

disposition data," is vested in the New York State Division of Criminal Justice Service. (Dkt. No. 125 at 3–4.)

The Court concludes that the reasonableness of SafeRent's procedures is not "beyond question." *See Crabill*, 259 F.3d 662, 664. To accept SafeRent's argument that reliance on information obtained from a governmental agency, regardless of context, categorically insulates a CRA from liability, would severely undermine FCRA's remedial purpose. *Cf. Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010) ("Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party."); *Ramos v. Genesis Healthcare, LLC*, 141 F. Supp. 3d 341, 347 (E.D. Pa. 2015) ("FCRA is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it." (citation and internal quotation marks omitted)).

Contrary to SafeRent's position, courts have not held that reliance on the records received from a governmental agency is *per se* reasonable for purposes § 1681e(b), but instead have explained that "reasonableness" under FCRA requires "context-specific" balancing. *Wenning*, 2016 WL 3538379, at *13 (citing *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998)). For example, in *Dalton*, the Fourth Circuit held that "a jury could properly conclude that it was an unreasonable procedure [for a CRA to allow its subvendors] to rely on a [county court] clerk's informal opinion on the crucial question of whether a specific crime is a felony and that [the CRA] should have had procedures in place to instruct its subvendors on the appropriate sources for reliable information about a person's criminal record." 257 F.3d at 417. In other words, the mere fact that the source of the inaccurate information was a governmental agency or

employee does not establish reasonableness as a matter of law. Similarly, in *Cortez*, the Third Circuit rejected a CRA's contention that its "credit report contained the most accurate information possible because [it] simply included the information furnished by the government." 617 F.3d at 708; *cf. Wenning*, 2016 WL 3538379, at *18 (denying summary judgment because, "[n]otwithstanding Lexis's concededly excellent reputation, [the CRA] was . . . arguably well-positioned to realize that the term Lexis employed had the potential to mislead [the CRA's] clients").

The cases relied upon by SafeRent, in which courts have concluded that a CRA's procedures were reasonable as a matter of law, are distinguishable. For instance, in *Henson v. CSC Credit Services* (which SafeRent describes as "perhaps the seminal case on the issue" (Dkt. No. 108 at 10)), the Seventh Circuit held that the defendant CRAs had "followed 'reasonable procedures' by obtaining the information from the Judgment Docket [of the state court], a presumptively reliable source," and therefore were "not liable under the FCRA for reporting inaccurate information obtained from [that source], absent prior notice from the consumer." 29 F.3d 280, 285 (7th Cir. 1994); *see also Houston v. TRW Info. Servs., Inc.*, No. 88 Civ. 0186, 1989 WL 59850, at *1 (S.D.N.Y. May 2, 1989) (holding that because "court personnel failed to enter the vacatur against [plaintiff] in the Judgment Docket Book and thus [the CRA's] vendor did not discover or report it," the CRA acted reasonably as a matter of law), *aff'd*, 896 F.2d 543 (2d Cir. 1990). In contrast, where, as here, a CRA has reported inaccurate criminal history information without consulting the court documents themselves or "the actual and original sources of the information that the CRA was reporting," at least one federal court has concluded that reasonableness was properly decided by a jury. *See Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1109 (N.D. Cal. 2016) (distinguishing *Henson* because CRA

9

"did not review the face of the court documents for the four reported convictions, and does not contend that there were any errors in the court documents themselves").

When SafeRent's procedures are properly considered in context of all the evidence presented at this stage, the Court concludes that there is a genuine factual dispute as to their reasonableness. The parties agree that SafeRent wholly failed to consult the "the actual and original sources"—i.e., county court records—before reporting the inaccurate criminal background information about Wilson. *See Taylor*, 207 F. Supp. 3d at 1109. Moreover, Wilson has submitted additional evidence from which a reasonable jury could conclude that SafeRent's procedures were negligent: for example, in her declaration, NYDOC Associate Commissioner of Population Management Anne Marie McGrath explained that NYDOC "maintains, reports, and provides *incarceration and parole data* relating to an individual's confinement to New York State Prison," but that it does not maintain complete data regarding the *underlying conviction* beyond its nature and class, such as the date of conviction, date of offense, date of sentence, criminal case number, or prior criminal history." (Dkt. No. 125-6 at 1–2 (emphasis added).) In addition, SafeRent concedes that the NYDOC's database is updated irregularly and that it could return a "record that had not been updated in six months." (Def.'s Reply SUF ¶ 53.)

Finally, and perhaps most important, SafeRent's argument for the inherent reasonableness of reliance on NYDOC data, upon which its entire position depends, rests on a faulty premise. SafeRent asserts that "[f]ormer inmates like Plaintiff, by definition, have a criminal history." (Dkt. No. 119 at 4.) This argument, however, obscures an intrinsic ambiguity in the word "conviction": There is a difference between "conviction" as historical fact—i.e., the end result of a criminal process—and "conviction" as a legal status—i.e., whether we continue to endow that historical fact with legal significance. Wilson's circumstances are instructive on this

point. His historical conviction was obtained in contravention of our constitutional criminal law and is now considered a legal nullity. *See Wilson*, 570 F.3d at 508. In short, incarceration is neither necessary nor sufficient to establish that an individual has a "criminal record."

"[I]t is important to note that § 1681e(b) erects a standard of 'maximum possible accuracy.' That requires more than merely allowing for the possibility of accuracy." *Cortez*, 617 F.3d at 709. Here, a factfinder should decide whether SafeRent failed to employ reasonable procedures to ensure maximum possible accuracy when it reported inaccurate criminal history information about Wilson without consulting any court records. SafeRent's motion for partial summary judgment is therefore denied.

### III. Motion for Class Certification

Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), Wilson moves to certify a class of consumers who were the subject of background reports performed by SafeRent. (Dkt. No. 104.) More specifically, he seeks certification of a class consisting of:

> All consumers who were the subject of a consumer report prepared by Defendant CoreLogic SafeRent, LLC from April 9, 2012 to the present, who subsequently disputed to Defendant that the report contained one or more items of criminal or public record information which had been expunged, vacated, sealed, dismissed, or otherwise removed from the public record, prior to the date of the report, and Defendant's comments in connection with the dispute included the root terms "unable to verify"; "remov!"; "delet!"; "elim!"; or, "eras!" or any iteration of those root terms.

(Dkt. No. 113 at 2.)

#### A. Legal Standard

"According to Rule 23(a) of the Federal Rules of Civil Procedure, there are four prerequisites to class certification: '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

11

the representative parties will fairly and adequately protect the interests of the class.'" *In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, No. 13 Civ. 150, 2015 WL 5730022, at *2 (S.D.N.Y. Sept. 30, 2015) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).

"If an action satisfies those prerequisites, it may be certified if it also satisfies one of the three parts of Rule 23(b)." *Id.* Under Rule 23(b)(3), certification is appropriate "only if 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013) (quoting Fed. R. Civ. P. 23(b)(3)). "In evaluating whether Rule 23's requirements are met, the Court conducts a 'rigorous analysis,' probing whether the plaintiffs have '*in fact*' proven each of the requirements." *Avon*, 2015 WL 5730022, at *2 (quoting *Comcast*, 569 U.S. at 33). "The Court must look 'behind the pleadings,' even if such an inquiry 'overlap[s] with the merits of the plaintiff[s'] underlying claim,' and determine if the plaintiffs have demonstrated the Rule 23 requirements by a preponderance of the evidence." *Id.* (quoting *Comcast*, 569 U.S. at 33); *see also Jones v. Sterling Infosystems, Inc.*, 317 F.R.D. 404, 411 (S.D.N.Y. 2016) ("[T]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." (quoting *Johnson,* 780 F.3d at 128) (internal quotation marks omitted)). "That is not to say, however, that the plaintiff must show that the common questions will be answered, on the merits, in favor of the class." *Avon*, 2015 WL 5730022, at *2 (quoting *Johnson*, 780 F.3d at 138) (internal quotation marks omitted).

### B. Wilson Has Not Satisfied His Burden by a Preponderance of the Evidence

Wilson has failed to establish by a preponderance of the evidence that the proposed class would meet the numerosity requirement of Rule 23(a)(1). "To meet the requirements of Rule 23(a)(1), the class must be so large that joinder of all members would be impracticable." *Jones*,

317 F.R.D. at 413 (quoting *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 423 (S.D.N.Y. 2014)) (internal quotation marks omitted). "Numerosity is presumed for classes larger than forty members." *Penn. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *see also* William B. Rubenstein, *Newberg on Class Actions* § 3:11 (5th ed. 2017) ("No specific number alone is determinative of whether numerosity is present, but joinder is generally deemed practicable in classes with fewer than 20 members and impracticable in classes with more 40 members."). "This requirement . . . 'is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members.'" *Jones*, 317 F.R.D. at 413 (quoting *Penn. Pub. Sch. Emps. Ret. Sys.*, 772 F.3d at 120).

Here, Wilson contends that SafeRent's discovery responses indicate that the proposed class consists of 685 consumers. (Dkt. No. 113 at 12.) SafeRent responds, however, that this group of 685 consumers consists almost entirely of individuals who do not actually fall within Wilson's proposed class. (Dkt. No. 122 at 7–8 & n.1.) The Court agrees with SafeRent.

The 685 consumers are a subset of the 3,993 individuals in SafeRent's business records who disputed the accuracy of their criminal reports and for whom a SafeRent representative used the "root terms 'expung!'; 'seal!'; 'dismiss!'[;] or 'vacate!'" ("List A") when memorializing that dispute. (Dkt. No. 113 Ex. 1 at 2.) Of those 3,993 consumer disputes, 685 *also* included the root terms "'unable to verify'[;] 'remov!'; 'delet!'; 'elim!'; or "eras!" or any iteration of those root terms" ("List B"). (*Id.*).

Contrary to Wilson's position, however, there is insufficient evidence that this subset of 685 individuals who disputed the accuracy of their records is coextensive with his proposed class. *Cf. Jones*, 317 F.R.D. at 413 ("[T]he universe of persons on whom [CRA] reported information" is not the same as "the universe of persons as to whom [CRA] reported information that was not complete and up to date."). Whether a SafeRent sales representative used root terms from both List A and List B in the same entry is not necessarily an accurate proxy for the set of individuals for whom SafeRent inaccurately reported criminal record information. More importantly, Wilson's proxy for his proposed class was not limited to disputes where SafeRent relied on NYDOC data. (Dkt. No. 122 at 8). Inexplicably, given that Counts 2 and 3 are based entirely on the alleged unreasonableness of SafeRent's reliance on NYDOC data in particular, Wilson argues that the question of reasonableness in the context of his class certification motion "has nothing to do with the *sources* of data that populate SafeRent's database." (Dkt. No. 127 at 6.)

If Wilson were able to identify numerous individuals for whom SafeRent inaccurately reported criminal background information in reliance on NYDOC data, he may have succeeded in meeting Rule 23(a)(1)'s requirement. Instead, he has provided no evidence to rebut SafeRent's representation that it is "presently unaware of any record currently in the Multistate Database and available for return that has been previously vacated, expunged, sealed, or dismissed," nor "any reported records that were previously vacated, sealed, expunged or dismissed prior to . . . their reporting." (Dkt. No. 122 at 7.) Indeed, Wilson took no discovery of NYDOC's database nor of any data from any other jurisdiction. (Dkt No. 123 ¶¶ 13–14). "Because Plaintiff has offered no evidence of the number of persons affected by records" that

were inaccurate due to reliance on NYDOC data, "Plaintiff has failed to satisfy his burden to prove numerosity." *See Jones*, 317 F.R.D. at 413.

Accordingly, the motion for class certification is denied.

## IV. Conclusion

For the foregoing reasons, SafeRent's motion for partial summary judgment is DENIED. The motion for class certification is DENIED.

The Clerk of Court is directed to close the motions at Docket Number 104 and 105.

SO ORDERED.

Dated: September 29, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge

15